**Joseph P. BOYLE, Plaintiff,**

v.

**READERS' SUBSCRIPTION INC. and A. Whitney Ellsworth, Defendants.**

**No. 77 Civ. 3013.**

United States District Court,
S. D. New York.

Feb. 22, 1979.

Joseph P. Boyle, pro se.

Cadwalader, Wickersham & Taft, by P. Jay Flocken, New York City, for defendants.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiff has moved for an order of recusal. This reiterates a motion made orally at a recent pretrial conference; the motion was denied then, and it is denied now.

In preparation for that pretrial conference the court reviewed the complaint and sensed substantial doubt as to the existence of subject matter jurisdiction. Since Rule 12(h)(3) of the Federal Rules of Civil Procedure requires the court to dismiss any action over which it lacks subject matter jurisdiction, this matter was inquired into at the pretrial conference, which the plaintiff attended in person. This inquiry confirmed the doubts raised by the complaint, and the court has no choice now but to dismiss the action.

The complaint alleges in substance that plaintiff Boyle joined a book club operated by the defendant corporation, which cancelled his membership on the advice of, or through the agency of, defendant Ellsworth, who is evidently an employee of the corporation. Exhibits attached to the complaint indicate that the cancellation of Boyle's membership was a response to his continuing dissatisfaction with the club's handling of his account during the first few months of his membership, when he was being billed for books that were sent to him but never received by him. It appears that these problems were ultimately resolved by credits to Boyle's account, and he does not claim any damages as a result of anything that happened while he was still a member of the club; rather, Boyle's claim is for $30,000 compensatory damages and $20,000 punitive damages stemming from defendants' refusal to continue his membership in the book club.

Subject matter jurisdiction in this case is said to be founded upon 28 U.S.C. §§ 1331, 1332. The complaint does not raise a federal question, however, and the only possible basis for jurisdiction is diversity of citizenship. That the parties in this case are of diverse citizenship is clear; the question to which this opinion addresses itself is whether the amount in controversy could possibly exceed $10,000. See generally *Deutsch v. Hewes Street Realty Corp.*, 359 F.2d 96 (2d Cir. 1966).

■ At the outset it is to be noted that the allegations in the complaint do not support a claim for punitive damages; there is no allegation of a wrong aimed at the public generally or a wrong that cannot be righted absent the inducement of a potential award of punitive damages. See *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1080 (2d Cir. 1977). Accordingly, if the jurisdictional amount is to be satisfied here it must be because there is at least a possibility that compensatory damages will exceed $10,000.

The first claim for relief is for breach of contract. At the pretrial conference I was shown Boyle's "membership certificate," which he clipped from an advertisement and mailed to the club with his signature; Boyle did not dispute the authenticity of this document, which states the terms of the book club's operations. This certificate describes a typical book club arrangement under which the subscriber receives, with his initial purchase, certain other books free or at nominal cost; in return, the subscriber agrees to purchase three more books over the course of a year. Each month the club informs its members of a "main selection" and alternate selections for the month; the main selection is sent out automatically unless the subscriber requests an alternate or no book at all for that month, but it may be returned if it turns out that the subscriber did not intend to receive it. Finally, the subscriber is awarded "bonus credits" with each book purchased, and when enough such credits have been accumulated they can be used to obtain a free book. No provision is made for termination of this arrangement.

Boyle does not allege that the books available through this club are not available elsewhere; apparently the damages he claims are solely for the difference between the club's price for the books it offers and the normal retail price. At the pretrial conference I asked plaintiff how he arrived at a $30,000 damage figure. His answer was that over a period of time he might have ordered hundreds of books from the club. The speculative nature of such damages renders it questionable that any damages could be awarded in this case at all; however, assuming for present purposes that they could be awarded, there arises the more critical question of the duration of the contract.

■ The plaintiff apparently regards the membership agreement as being of unlimited duration, but he alleges nothing from which such conclusion could be drawn. The general rule is that "[i]f the parties intend that the obligation be perpetual they must expressly say so." *Warner-Lambert Pharmaceutical Co. v. John J. Reynolds, Inc.*, 178 F.Supp. 655, 661 (S.D.N.Y.1959), *aff'd on the opinion below*, 280 F.2d 197 (2d Cir. 1960). Here it is not alleged that there was an agreement that was intended to last forever, let alone that such an intention was expressly stated. The contract in this case was either terminable at will or terminable within a reasonable time, depending upon the intent of the parties. See generally *Warner-Lambert, supra*, 178 F.Supp. at 661, 10 N.Y.Jur. *Contracts* § 412 (1960 & Supp.1978). Adopting the construction most favorable to the plaintiff, the court will assume that the contract was intended to extend for a reasonable time.

■ Plaintiff acknowledged at the pretrial conference that any given book offered by the club would be worth no more than $30. Even if he had been able to save $50 per month by ordering books regularly through the club, it would have taken him over sixteen years to benefit from his membership to the extent of $10,000. A reasonable duration for subscription to such a monthly service as that offered by the de-

fendant corporation might be found to be one to three years, by analogy with magazine subscriptions, but under no circumstances could it be enforceable for as much as ten years, let alone sixteen.

The conclusion is inescapable, therefore, that the court lacks jurisdiction over the first claim. The second claim, for tortious interference with contract, is directed at defendant Ellsworth, who is alleged to have "stood as a third party between the corporation-seller . . . and the buyer (Plaintiff)." But this claim contains no allegation of damages beyond those claimed to have been suffered as a result of the alleged breach itself; accordingly, this claim too fails to satisfy the requisite jurisdictional amount.

The third and final claim, for "concerted refusal to deal," alleges that the defendants "refused to deal with plaintiff in a concerted and conspiratorial effort to oust him from the subscription service and breach and interfere with his business-contractual relationships." This appears to be essentially a restatement of the first two claims; to the extent that the heading on this claim indicates a desire to state an antitrust violation or an anticompetitive tort, the allegations fail utterly to support the claim. Indeed, the allegations under this heading indicate, if anything, a willingness on the part of the defendants to go out of their way to *continue* dealing with Boyle by arranging a special plan whereby he could avoid the risk of being sent unwanted "main selections" and still order any books that he desired to receive.

Plaintiff's motion to recuse is denied and on the court's own motion the action is dismissed.

So Ordered.